PULASKI, Plaintiff in error, v. STATE, Defendant in error.*

*February 7—March 6, 1964.*

* Motion for rehearing denied, without costs, on April 28, 1964

140

For the plaintiff in error there was a brief and oral argument by *Francis J. Demet* of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William A. Platz,* assistant attorney general, *William J. McCauley,* district attorney of Milwaukee county, and *Donald W. Steinmetz,* assistant district attorney.

HALLOWS, J. On the hearing of the motion, no question was raised by the state that the court was without jurisdiction, but on this appeal the question is raised whether a motion for a new trial can be properly made after the sentencing on a plea of guilty. A motion for a new trial where a sentence has been imposed upon a finding of guilty based on a plea of guilty implies the withdrawal of the plea. Likewise, a motion to withdraw the plea of guilty and to vacate the judgment and sentence implies the necessity of a subsequent trial. It apparently has been assumed without question and the practice up to this date has been that a motion for a new trial under sec. 958.06, Stats., was a proper

remedy when a defendant has been sentenced on a plea of guilty.[1]

The state contends such a motion for a new trial is not proper because there has been no trial within the meaning of the section and therefore there can be no new trial. In *Belter v. State* (1922), 178 Wis. 57, 189 N. W. 270, it was stated a plea of guilty was a waiver of any trial. Certainly the plea avoids a contest of disputed facts the same as a confession of judgment or the failure to answer in a civil action. A court is permitted to receive a plea of guilty and to enter a judgment thereon under sec. 957.25, Stats., and a conviction may rest upon a plea of guilty without any supporting testimony being taken. Sec. 959.01. A trial is defined as a judicial examination of the issues between the parties whether they be issues of law or of fact. Sec. 270.06; see also 88 C. J. S., Trial, p. 19, sec. 1. We must agree the new trial contemplated by sec. 958.06 is a retrial of issues and the section affords no remedy for one convicted on his plea of guilty.

A motion to withdraw a plea of guilty and for a trial, as we deem the defendant's motion to be, although not governed by sec. 958.06, Stats., is a motion directed to the discretion of the court in the interest of justice which the court has the inherent power to hear. If the motion is granted, the judgment or conviction must be vacated and the sentence set aside. But the motion is not governed by sec. 269.46 relating to relief from a judgment or by the rules prohibiting a court from modifying its judgments after the expiration of the term of court any more than such section and rules apply to the jurisdiction of the court to hear a writ of *habeas corpus*. A motion to withdraw a plea

[1] *Ailport v. State* (1960), 9 Wis. (2d) 409, 100 N. W. (2d) 812; *Sorenson v. State* (1922), 178 Wis. 197, 188 N. W. 622; *Gordon v. State* (1922), 178 Wis. 205, 188 N. W. 752.

of guilty and for a trial after conviction stands upon other grounds.

Pleas of guilty are not to be lightly treated by the courts. Out of consideration for the rights of persons accused of crime, courts must be careful not to accept a plea of guilty unless it is made voluntarily after proper advice and with full understanding of the consequences. ". . . on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. . . . The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States* (1927), 274 U. S. 220, 47 Sup. Ct. 582, 71 L. Ed. 1009; see also Annos. Right to Withdraw Plea of Guilty, 20 A. L. R. 1445, 66 A. L. R. 628.

As to the timeliness of the application to withdraw the plea of guilty, it has been stated the withdrawal and substitution of the plea cannot be permitted after sentence. 2 Bishop, New Criminal Procedure (2d ed.), p. 586, sec. 747. We think, however, justice demands that even after sentence on a plea of guilty and perhaps more so a motion to withdraw the plea and for a trial may be made and is timely if served and filed within a year from the finding of guilty. To require the hearing of the motion to be had and the order granting the motion to be made within the year seems to be unjust. One convicted upon a plea of guilty ought not be denied relief in a proper case because a trial court for valid reasons of pressure of work or otherwise cannot hear and decide the motion within a time limit set in reference to the diligence of the petitioner. A period of one year is a generous allowance of time for one convicted to make a motion to change his plea and for a trial if there is any merit to his cause. One who seeks in the name of justice

to withdraw his plea of guilty on the grounds it was given or obtained through ignorance, fear, inadvertence, or in violation of his constitutional rights ought to be aware of and make known his complaint within a year. There may be an exceptional case or two but normally for a trial court to entertain a motion made beyond a year would seem to be an abuse of discretion.

The year within which such a motion may be made does not start from the date of the plea of guilty. In many cases, pleas are made, accepted, findings made, and sentences imposed the same day; but in other cases, testimony is taken in connection with the plea of guilty and a finding deferred. In the instant case the plea was made on May 5th and testimony taken on the plea and of other burglaries with the consent of the defendant and the assurance of the district attorney he would not issue additional warrants. In order to protect the defendant from future prosecution, such testimony is given prior to the finding of guilty although such practice also serves the purpose of informing the court for its consideration of the sentences to be imposed. Until the finding of guilty by the court is made, the plea stands unaccepted and the year within which a motion to withdraw the plea should be made ought not start to run. Under this view, the motion of the defendant was timely made.

While the defendant in his supporting affidavits to the motion claims many reasons why he should be allowed to withdraw his plea, these grounds on this appeal have been combined into several major contentions which will be discussed seriatum.

His major contention is based on the ground he had been held incommunicado for thirty-six hours, had been subjected to physical punishment by the police officers during that period, and his person, car, and house were searched without a warrant in violation of his constitutional rights.

In his affidavits the defendant states he was arrested while driving his car home from a tavern on the night of March 28, 1961, in the city of Milwaukee, that his person and his car were searched without his permission or a search warrant, that he was taken home and his house was searched without a warrant and he was given intoxicants to drink while at home. Subsequently he was taken to the police headquarters and questioned for thirteen hours after which he was again taken to his home which was again searched and items found which allegedly came from burglaries. He was returned to the county jail and again questioned. Defendant also affirms that during the thirty-six hours he was not allowed to communicate with an attorney or his friends, was beaten by the police and as he puts it, "given the Milwaukee co-operation treatment," which was successful and resulted in his plea of guilty and the disclosure of other burglaries.

The defendant's statements of being held incommunicado for thirty-six hours, although he requested permission to communicate with an attorney and friends, are not denied but ignored in the affidavits of the police officers. We understand the desire of police officers to extensively interrogate a prime suspect before bringing him before a magistrate, but we do not approve of holding a suspect for thirty-six hours incommunicado in the face of his request to communicate with an attorney, a relative, or a friend. Such detention casts a doubt upon the validity of police methods of crime detection, constitutes an abuse to the arrested individual and may raise a question of the voluntariness of the acts performed and the statements made by the accused during that period of time. The same may be said for the alleged physical treatment of the defendant and the illegal searches.

The defendant relies on federal cases holding a conviction will be reversed if based upon a confession which was ob-

tained after a long period of detention and questioning.[2] In these cases the involuntariness of the confession was considered to be caused by the long detention and questioning and "obtained in an atmosphere of substantial coercion and inducement created by statements and actions of state authorities." Such cases would be applicable here if the illegal searches and the treatment of the defendant called forth a plea of guilty so it could be said such a plea was the result of the violations of the defendant's rights. However, the alleged defendant's fear and other considerations apparently were not sufficiently strong to induce a plea of guilty. Upon arraignment and while being represented by counsel of his own choosing, the defendant pleaded not guilty and thus the issue of the alleged invasion of his constitutional rights was preserved. It is true, at this hearing counsel stated the plea was a technical one and as soon as some other matters were "squared away," the defendant would be ready for trial. This was on April 18th. Between this date and May 5th when the defendant changed his plea to a plea of guilty we find nothing in the record which coerced the defendant or rejuvenated any fear which caused him to change his plea. We find no causal connection between the incommunicado detention and his treatment by the police on March 28th and 29th which caused him to change his not-guilty plea. Some showing must be made why the preservation of the constitutional issues were not waived by his subsequent plea of guilty. No claim is made the defendant was an ignorant or untutored person without understanding of his rights and without aid of counsel, and such claim cannot be made on

---

[2] *Fikes v. Alabama* (1957), 352 U. S. 191, 77 Sup. Ct. 281, 1 L. Ed. (2d) 246; *Turner v. Pennsylvania* (1949), 338 U. S. 62, 69 Sup. Ct. 1352, 93 L. Ed. 1810; *White v. Texas* (1940), 310 U. S. 530, 60 Sup. Ct. 1032, 84 L. Ed. 1342; *Haynes v. Washington* (1963), 373 U. S. 503, 513, 83 Sup. Ct. 1336, 10 L. Ed. (2d) 513.

the record. We must look elsewhere for his reason for pleading guilty.

The defendant contends his plea of guilty was a result of being misled by the authorities and misrepresented by his counsel. The defendant claims he was promised a consolidation of all charges of burglaries for his plea and cooperation and he did not receive the promised *quid pro quo* because after the sentencing in this case he was informed against in Kenosha and Ozaukee counties. The charge of being misled or the victim of unfair play is not sustained by the record. With the defendant's consent, 21 burglaries in addition to the three charged were testified to upon the assurance of the district attorney in open court that no warrants would be issued. It is true, the defendant's counsel referred to the Ozaukee matter on April 18th, and on May 5th requested a recess so the Ozaukee burglaries could be brought into the case. This, however, was not done and the record is silent as to the reason.

Consolidation of charges of crime pending in several counties is not automatic and requires the initiative of the accused. Under sec. 956.01 (13), Stats., a person who admits a felony in a county in which he is in custody and also in another county may apply to the district attorney of the county in which he is in custody to be charged with those crimes so he may plead guilty and be sentenced for them in the county of custody. There is no requirement that all charges must be consolidated if an application is made; the statute leaves to the discretion of the district attorney in the other county whether or not to consent to such a consolidation.

If the defendant entered the plea of guilty with the hope and expectation or belief that either the punishment to which he might be exposed would be mitigated and the out-of-county charges would also be consolidated so he could also

plead guilty to them, those hopes, expectations, or beliefs, even though induced by his counsel or others, or as a consequence of misinterpretation of things said to him, normally would not constitute a ground for the exercise of the discretion necessary to permit the plea of guilty to be withdrawn. *People v. Manriquez* (1922), 188 Cal. 602, 206 Pac. 63; see Anno. 20 A. L. R. 1445. The defendant has shown no deal was made to consolidate all charges against him in exchange for his plea of guilty and co-operation.

Nor is the alleged negligent representation by counsel a ground for the withdrawal of the plea of guilty. The only complaint we can discern is his attorney did not get all the charges consolidated. The trial court in its opinion found the defendant's counsel was competent. Often after trial, charges of incompetency are directed toward counsel because it appears other tactics than those chosen might have been more helpful to the accused. Criminal as well as civil cases cannot be retried at the instance of the loser because he is more hopeful of success on a second try. Unless the representation of counsel is so inadequate and of such low competency as to amount to no representation, a new trial cannot be granted on that ground.[3] If something less than the highest degree of skill and competency of counsel were a ground for a new trial, nothing would prevent the accused in the first instance from hiring competent counsel but admittedly not the most skilful in order to assure himself of a second opportunity for acquittal. Such a rule would lead to great abuse and could not be justified in the interest of justice.

It is true the judges of the criminal branches of the circuit courts denied the defendant counsel on his motion, but this cannot be urged for the reversal of the order in the interest

---

[3] *State ex rel. Derber v. Skaff* (January 7, 1964), 22 Wis. (2d) 269, 125 N. W. (2d) 561; *State v. Henderson* (1937), 226 Wis. 154, 274 N. W. 266; *Starr v. State* (1931), 205 Wis. 310, 237 N. W. 96; see Anno. 74 A. L. R. (2d) 1395.

of justice. The defendant did in fact have counsel supplied by the Bar Association at the hearing on the motion and whatever temporary error was committed was rectified at the time of the hearing. While testimony may be taken on a hearing of a motion as well as the use of depositions and affidavits, sec. 269.32 (3), Stats., the failure of the court to subpoena witnesses for the defendant under the circumstances of this case does not require a reversal of the order. Judge DECKER took the defendant's affidavits at face value with the exception of the conclusion his trial counsel was incompetent. Although these affidavits were contradicted by counteraffidavits, the court considering the defendant's affidavits as a verity found the defendant made an insufficient showing of prejudice to his rights or of grounds which would require the court to allow the defendant to withdraw his plea. We find no abuse of discretion in this respect.

The rest of the defendant's contentions do not constitute grounds for the withdrawal of the plea but rather relate to the sentence. The writ of error was limited to a review of the order denying the motion to withdraw the plea. The defendant contends the trial took six months with portions heard at the Fox Point police station which violated his constitutional rights to a speedy and orderly trial. True, after the plea of guilty, the trial judge threatened the defendant with a maximum sentence of thirty years if he did not co-operate with the police and disclose his accomplices and that night had a conference with the defendant at the Fox Point police station where he was taken from the Milwaukee jail. Such conduct leads to public suspicion of unseemly co-operation between the judge and law-enforcement officers and creates doubts of the impartiality of the judge. While we cannot condone either of these activities on the part of the trial judge, they have no bearing upon the voluntariness of the plea nor do they furnish any grounds

why it should be withdrawn. Such matters relate to the length of sentence which the defendant received.

Likewise, the contention the defendant was subjected to cruel and unusual punishment because he received concurrent sentences in Ozaukee county to be served consecutively to the Milwaukee sentences does not furnish a ground for withdrawal of the plea. It is not cruel, inhuman, or unusual punishment for sentences to be served consecutively. Furthermore, the Ozaukee consecutive sentence is not before us on this review. The defendant requests this court to exercise its supervisory power under sec. 3, art. VII of the Wisconsin constitution and reverse all sentences. This request is beyond the scope of the review and in addition, this case does not call for the exercise of such power even if properly invoked.

*By the Court.*—Order affirmed.

GORDON, J. (*concurring*). When police officers hold an arrested person incommunicado, there is a head-on conflict of rights and interests. On the one hand, the police officers have an understandable desire to strike while the iron is hot—to interrogate and to investigate; they also want to prevent the suspect from alerting any accomplices. On the other hand, the arrested person, by reason of basic constitutional and statutory rights, should be permitted to consult with counsel and to be brought before a magistrate "without unreasonable delay."

Even if the motives of the police in detaining a suspect incommunicado are not reprehensible, the effect is. It smacks of an offensive police state to permit an individual to be swept into the arms of the police and to be completely sealed off from any outside communication for a period as long as thirty-six hours.

This constitutes an abuse to the arrested individual whom we must assume, by law, is innocent. There is also terror

to the members of his family who have no means of finding out where he is or what has happened. The typical wife or parent would be making frantic inquiries to hospitals if a husband or son failed to return home all night. Yet nothing would be learned.

Assuming that Pulaski was in fact held incommunicado by the police for thirty-six hours as he claims, the court has properly disapproved of such practice. I have a doubt that mere disapproval is sufficient, although I recognize that this court has declined to reverse convictions upon the ground of prolonged detentions. Indeed, it was pointed out in a note in 1960 Wisconsin Law Review, 164, 170, that the Wisconsin supreme court has never found a detention to be unreasonable. However, an extended detention is one of the factors to be considered in determining whether a confession was voluntarily made. See *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. (2d) 513. Wisconsin has recently enacted a statute which in a very limited manner is designed to assure an arrested person the right to consult his attorney. Sec. 946.75, Stats. 1961.

In my opinion, the holding of a suspect incommunicado for a long period offends a fundamental fairness which is essential to justice; courts should revise their interpretations so as to restrict such detentions to far shorter periods. In *Cicenia v. LaGay* (1958), 357 U. S. 504, 508, 78 Sup. Ct. 1297, 2 L. Ed. (2d) 1523, the United States supreme court, although it found no violation of due process, referred to the denial by the police of the suspect's request to confer with his attorney and said:

"We share the strong distaste expressed by the two lower courts over the episode disclosed by this record."

I am authorized to state that Mr. Justice DIETERICH joins in this concurring opinion.