Chief Judge Fuld.
These two appeals present the interesting and thought-provoking -question whether the imposition of a prison sentence or other penal sanction upon a narcotics addict who commits crimes solely for the purpose of procuring money to make drug purchases is impermissible as “ cruel and unusual punishment ” under our Constitution (IT. S. Const., 8th Arndt.; N. Y. Const., art. I, § 5).
The two defendants—whose sole connection with each other is the fact that we are disposing of their appeals together— are long-time narcotics users with criminal records, mostly *335 for narcotics offenses and larceny. They were indicted for various felonies, Walton in connection with an incident of purse snatching and Borrero for a burglary. The former pleaded guilty to petit larceny and was sentenced to an indeterminate prison term and Borrero was also given a prison sentence following his plea of guilty to attempted grand larceny.
The Appellate Division has affirmed the convictions of both defendants.
On their appeals to our court, they claim that, since they were driven to a life of crime by their need to finance their drug addiction, they should be held to have lacked criminal responsibility for their acts. Assuming without deciding that they can raise this issue following a guilty plea (cf. People v. Codarre, 10 N Y 2d 361), we find no merit to their argument.
In Robinson v. California (370 U. S. 660, 666-667) the Supreme Court reversed a judgment convicting the defendant of the crime of being “ addicted to the use of narcotics ”, on the ground that, since “ narcotics addiction is an illness ”, to make the ‘ ‘ ‘ status ’ of narcotics addiction a criminal offense ’ ’ was to inflict upon the addict “ cruel and unusual punishment ”. However, in his opinion for the court, Justice Stewart was careful to point out that the California statute which was invalidated did not purport to punish a person “ for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration” (370 U. S., at p. 666).
The defendants in the cases before us were not convicted for being drug addicts or even for narcotics offenses but rather for petit larceny and attempted grand larceny, types of “ antisocial behavior ” by drug addicts which (as suggested by the Supreme Court) remain proper subjects for penal sanctions. Although in extreme cases drug addiction can render its victims incompetent— i.e., “incapable” of committing crime — and absolve them from criminal responsibility (see Hansford v. United States, 365 F. 2d 920; United States v. Freeman, 357 F. 2d 606; Brown v. United States, 331 F. 2d 822; People v. Zapata, 220 Cal. App. 2d 903, 908, app. dsmd. 377 U. S. 406; cf. Heard v. United States, 348 F. 2d 43), “ mere * * * narcotics addiction will not ”, as the Court of Appeals for the Second Circuit recently observed, “of [itself] justify acquittal”. (United *336 States v. Freeman, 357 F. 2d 606, 625, supra; cf. Mental Hygiene Law, § 206, subd. 6 [L. 1962, ch. 204] ; § 206-b.)[1]
The defendants before us do not assert that they lacked “ substantial capacity to know or appreciate either * * * [the] nature and consequence of [their] conduct; or * * * [that] such conduct was wrong” (Penal Law, § 1120; cf. Penal Law, § 1220). Moreover, they acknowledge that Robinson v. California (370 U. S. 660, supra) is “ distinguishable ” and does not require a reversal here. The heart of their argument concerns “ the inadequacy of prison confinement as * * * [a] means of rehabilitating the addict-offender.” This may very well be true but it has nothing to do with the Legislature’s power to punish those who steal or rob, and it may not be said that the punishment here meted out, imprisonment, was “ cruel [or] unusual punishment ’ ’ within the sense of the constitutional prohibition.
In point of fact, the proper method for dealing with drug addiction — about which, as we all know, there is considerable dispute (see, e.g., Medical Views on the Narcotics Problem, 31 F. R. D. 53) —has been a matter of grave concern for the Legislature. Since 1962 our statutes have provided ‘ ‘ a comprehensive program to combat the effects of the disease of drug addiction ” (Mental Hygiene Law, § 200, subd. 1) and, most recently, the program was expanded not only as to civil commitments but also as to compulsory treatment for narcotic addicts ‘ ‘ accused or convicted of crimes” (Mental Hygiene Law, § 200, subd. 3). Voluntary or involuntary civil commitment to an appropriate institution is presently authorized for a period up to 36 months (Mental Hygiene Law [L. 1966, ch. 192], § 206). With respect to an addict who is arrested for crime, such as each of the defendants before us, the present procedure is to delay all *337 proceedings except arraignment for up to 10 days while he undergoes “ a medically supervised course of treatment to detoxify him ” (Mental Hygiene Law [L. 1962, ch. 204], § 210, subd. 4). Thereafter, in an appropriate case, the addict may “ request consideration by the court for civil commitment * * * [and] if the court so orders * * * [and] if he successfully completes this medically supervised * * * program, the criminal charges pending against him will abate ’ ’ (Mental Hygiene Law [L. 1962, ch. 204], § 212, subd. 2; see Mental Hygiene Law [L. 1966, ch. 192], § 210). Neither of these defendants, however, qualified for such treatment because they were indicted for felonies for Avhich, if they had been convicted, they would have had to serve ‘ ‘ at least a statutory mandatory minimum term because of a prior felony conviction” (Mental Hygiene Law [L. 1962, ch. 204], § 212, subd. 6, par. [h]; see Mental Hygiene Law [L. 1966, ch. 192], § 210, subd. 2, par. [a]; see, also, People v. Shaw, 46 Mise 2d 894). While it may be unfortunate that they were not able to avail themselves of the rehabilitation program which the Legislature has provided for some narcotics addicts in lieu of prosecution, we find no constitutional grounds for complaint.
Under new amendments to the Mental Hygiene Law, every addict convicted of a misdemeanor perpetrated after October 1, 1967[2] — and, therefore, not applicable to the defendants in the present case — must be committed for treatment for an indefinite period up to 36 months and most addicts convicted of a felony perpetrated after that date may be committed, in the court’s discretion, for an indefinite period up to 60 months (Mental Hygiene Law [L. 1966, ch. 192], § 208, subd. 4, pars, a, b). The statute prescribes that this commitment in lieu of sentence under the Penal Law “ shall be deemed a judgment of conviction” (Mental Hygiene Law [L. 1966, ch. 192], § 208, subd. 5). We note that in Wisconsin such special treatment is apparently available only for addicts who are convicted of narcotics offenses rather than — as under our new legislation —for crimes generally. In a recent Wisconsin case (De Vougas v. State, 29 Wis. 2d 489), an addict who was convicted for *338 attempting to obtain narcotics by forging a prescription claimed that he was constitutionally entitled to similar special postconviction treatment. The high court of that State rejected the argument, holding that it was for the ‘ ‘ legislature, not this court * * * to consider whether or not it is advisable to empower a court ” to commit a person for treatment for drug addiction rather than sentence him to prison as punishment for the crime (29 Wis. 2d, at p. 496).
In each case, the judgment of conviction should be affirmed.
Judges Van Voorhis, Burke, Soileppi, Bergan and Keating concur; Judge Breitel taking no part.
In each case: Judgment affirmed.

. While drug addicts are subject to civil commitment for treatment (Mental 'Hygiene Law, art. 9), the Legislature has recognized that these persons are not incompetent like the mentally ill and our statutes expressly provide that such commitment for treatment “shall not forfeit or abridge any of the rights of any such drug" addict as a citizen * * *; nor shall the provisions of the election law depriving or limiting the right * * * to register or vote be applicable to any such drug addict; nor shall the facts or proceedings relating to the * * * treatment * * * be used against him or without his consent in any proceeding in any court ” (Mental Hygiene Law, § 206, subd. 6 [L. 1962, ch. 204]; § 206-b).

. The amendments also apply to all addicts who are convicted of certain narcotics crimes (Penal Law, §§ 1747-e, 1751, 1751-a) perpetrated after April 1, 1967. (See Mental Hygiene Law [L. 1966, ch. 192], § 207, subd. 1.)